# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of | No. 55505-1-II |
| M.L., | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – ML appeals the trial court's order involuntarily committing her for 14 days of treatment under former RCW 71.05.230 (2020).

ML was medically admitted into St. Clare Hospital with mental health issues. Thirteen days later, St. Clare evaluated and placed ML on a 72-hour detention after she tried to leave the hospital. St. Clare dropped this detention the next day, and no 14-day petition was filed. A day and a half later, St. Clare initiated another 72-hour detention and filed a timely petition for a 14-day involuntary commitment.

ML moved to dismiss the 14-day petition because she was detained for more than the statutory 72-hour maximum without a hearing. The trial court denied ML's motion to dismiss and motion for reconsideration. The trial court found that ML was gravely disabled and ordered that she be committed for 14 days for involuntary treatment.

We hold that the trial court did not err in denying ML's motion to dismiss the 14-day petition. Therefore, we affirm the trial court's 14-day involuntary commitment order.

FACTS

*Background*

ML was medically admitted to St. Clare Hospital on November 3, 2020 after she bit her husband on the arm, causing him to bleed. She was not involuntarily detained at that time. On Friday November 13, St. Clare requested a designated crisis responder (DCR) evaluation because ML had attempted to leave the hospital.

On November 16, DCR Dane Christensen evaluated ML and determined that she presented a likelihood of serious harm to herself or others or that she was gravely disabled. He requested a 72-hour initial detention, and ML remained at St. Clare.

The 72-hour detention was dropped on November 17 at approximately 10:00 PM. A subsequent petition stated that the detention was dropped because it was thought that ML would be appropriate for voluntary care, but ML refused to consent to voluntary inpatient mental health care. ML remained at St. Clare, but there is no indication in the record that she was not free to leave.

On November 18 at approximately 2:30 PM, St. Clare requested another DCR evaluation. On November 19 at approximately 12:00 PM, DCR Todd McFarland evaluated ML and determined that she constituted a likelihood of serious harm to herself or others or that she was gravely disabled. He requested another 72-hour detention at St. Clare. This detention was set to end on November 24. Christensen filed a 14-day petition for involuntary treatment on November 23.

Christensen diagnosed ML with unspecified neurocognitive disorder with behavioral disturbance and determined that she was gravely disabled. He expressed concern about ML's release because ML had pulled a knife on her husband earlier that year. ML also exhibited

suicidal ideations. Christensen also did not recommend any less restrictive treatment because ML was still having delusions and was not open to alternative placement.

The trial court held a probable cause hearing on November 24, in which Christensen testified to the facts above. ML argued that the petition should be dismissed because she was detained for more than the 72-hour statutory limit without a hearing. The court denied ML's motion to dismiss without prejudice, stating that it would consider a more fully-developed motion for reconsideration on the issue. The court also found that ML suffered from a mental disorder that rendered her gravely disabled and that a less restrictive alternative was not appropriate.

ML filed a lengthy motion for reconsideration, attaching additional evidence. The trial court denied the motion. ML appeals the court's 14-day involuntary commitment order.

ANALYSIS

ML argues that the trial court erred in denying her motion to dismiss St. Clare's petition for a 14-day involuntary commitment because she was subjected to two successive 72-hour detentions without a court hearing, which totally disregarded the requirements of the Involuntary Treatment Act (ITA), chapter 71.05 RCW. We disagree.[1]

A.    LEGAL PRINCIPLES

1.    72-Hour and 14-Day Detentions

A DCR can order that a person be taken into emergency custody for not more than 72 hours when they receive information that the person, because of a mental disorder, presents "an imminent likelihood of serious harm, or is in imminent danger because of being gravely

---

[1] The State does not argue that dismissal of the 14-day petition was not an allowable remedy for the alleged ITA violation regarding the initial 72-hour detention. Therefore, we do not address this issue.

disabled." Former RCW 71.05.153(1) (2020).[2] The 72-hour period does not include Saturdays, Sundays, or holidays. Former RCW 71.05.180 (2020).

A person detained for 72 hours for evaluation and treatment may be committed for 14 additional days of involuntary intensive treatment. Former RCW 71.05.230. When a petition for a 14-day involuntary commitment has been filed, the court must hold a probable cause hearing on the petition within 72 hours of the initial detention. Former RCW 71.05.240(1) (2020). A person who has been detained for 72 hours must be released at the end of that period unless a court orders continued detention for further treatment or the person is referred for further care on a voluntary basis. Former RCW 71.05.210(1)(b) (2020).

Any person who voluntarily is admitted to a public or private agency for inpatient treatment must be released upon request. RCW 71.05.050(1). However, if the professional staff of the agency regards the person requesting discharge as "presenting, as a result of a behavioral health disorder, an imminent likelihood of serious harm, or is gravely disabled, they may detain such person for sufficient time to notify the [DCR] of such person's condition to enable the [DCR] to authorize such person being further held in custody." RCW 71.05.050(2).

2. "Totally Disregarded" Standard

RCW 71.05.010(2) states:

When construing the requirements of this chapter the court must focus on the merits of the petition, *except where requirements have been totally disregarded*, as provided in *In re C.W.*, 147 Wn.2d 259, 281 (2002). A presumption in favor of deciding petitions on their merits furthers both public and private interests because the mental and physical well-being of individuals as well as public safety may be implicated by the decision to release an individual and discontinue his or her treatment.

---

[2] The current version of this statute and related statutes now provide for a 120-hour detention rather than a 72-hour detention. RCW 71.05.153(1) (2021).

(Emphasis added.) RCW 71.05.010(2) reflects the principle that "[d]ismissal of an involuntary treatment petition and release of the person subject to the petition is not often the proper remedy because of the importance of providing treatment to those requiring it." *In re Det. of C.V.*, 5 Wn. App. 2d 814, 822, 428 P.3d 407 (2018).

B. ANALYSIS

ML claims that she was unlawfully detained for at least 11 days without a hearing, from November 13 to November 24. However, we conclude that St. Clare did not violate the ITA because there were not two successive 72-hour detentions.

ML was not involuntarily detained while she was hospitalized at St. Clare from November 3 until November 13. She apparently remained in the hospital voluntarily. She was referred to a DCR on November 13 and involuntarily detained on November 16, but that detention was dropped around 10:00 PM on November 17. ML remained at St. Clare after that time, but her involuntary detention had ended. Nothing in the record indicates that her hospitalization was involuntary at that time or that she was prevented from leaving. In the absence of contrary evidence, the presumption is that she returned to the same voluntary status as she was between November 3 and 13.

ML was involuntarily detained again on November 19 around 12:00 PM. By that time, approximately 38 hours had passed since her first detention ended. Even if ML was temporarily detained when St. Clare requested the DCR evaluation November 18 at 2:30 PM, ML still went over 16 hours without being detained. As a result, there were no successive 72-hour detentions – there was a gap in between.

Even if St. Clare did violate the ITA, the record does not show that St. Clare totally disregarded the ITA requirements. St. Clare did not simply detain ML indefinitely without

cause. Instead, St. Clare dropped the first detention even though the statute allowed for two more days of detention. And after the first detention ended, St. Clare had ML evaluated by another DCR to see if she still met the criteria for a 72-hour detention. St. Clare then promptly filed a 14-day petition and a timely probable cause hearing was held. In addition, any unlawful detention was minimal.

We hold that the trial court did not err in denying ML's motion to dismiss the 14-day petition.

## CONCLUSION

We affirm the trial court's 14-day involuntary commitment order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
GLASGOW, A.C.J.

_____
VELJACIC, J.