FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 OCT 22 AM 9: 39

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| In the Matter of the Detention of | ) No. 77057-8-I |
| | ) |
| C.V. | ) |
| | ) |
| | ) PUBLISHED OPINION |
| | ) |
| | ) FILED: October 22, 2018 |

VERELLEN, J. — If a person, as a result of a mental disorder, "presents a likelihood of serious harm, or is gravely disabled," the court shall order the person involuntarily detained for treatment.[1] A court may dismiss a meritorious petition for involuntary commitment only if the involuntary treatment act requirements for commitment "have been totally disregarded."[2] The policy underlying this heightened standard is that individuals with serious mental health issues requiring involuntary commitment for treatment should receive timely and appropriate care to safeguard the individuals themselves and the public at large.[3]

A nonlicensed facility may provide treatment if it obtains a single bed certification. The single bed certification must be specific to the patient receiving

---

[1] RCW 71.05.240(3)(a).

[2] RCW 71.05.010(2).

[3] RCW 71.05.010(1)(a).

treatment[4] and must include a description of why the individual being committed can receive appropriate mental health treatment at that facility.[5] Evergreen Hospital's reliance on an single bed certification application lacking such a description was not a total disregard of the involuntary treatment act requirements.

Accordingly, we affirm the trial court order imposing a 14-day commitment.

## FACTS

On May 30, 2017, a King County designated mental health professional petitioned the superior court for a 72-hour inpatient involuntary detention of C.V., a 65-year-old. The following day, the court granted the petition, and C.V. was sent to Evergreen Hospital. Evergreen was not a certified evaluation and treatment facility. On June 1, 2017, another designated mental health professional applied to the Department of Social and Health Services[6] for a single bed certification for Evergreen pursuant to RCW 71.05.745 and WAC 388-865-0526. The only information specific to C.V. in the application was his name, Social Security number, gender, birthdate, and legal status. Western State Hospital, acting for the Department of Social and Health Services, granted the request.

---

[4] RCW 71.05.745(2).

[5] Former WAC 388-865-0526(2)(b)(iii) (2015), repealed by WASH. ST. REG. 18-14-034 (effective 7/1/18). Emergency replacement rules are "substantially the same." WASH. ST. REG. 18-14-027 (effective 7/1/18). We refer to the regulation by its former designation as its permanent replacement has not yet been adopted.

[6] At the time, the Department of Social and Health Services was responsible for granting single bed certification applications. RCW 71.05.745. Recent legislative changes to the involuntary treatment act now place responsibility with the Washington State Health Care Authority. This change has no bearing on our analysis.

On June 6, 2017, Evergreen petitioned the court to involuntarily detain C.V. for an additional 14 days. C.V. moved to dismiss the petition and to be immediately released. C.V. argued the court improperly granted the 72-hour detention because Evergreen's single bed certification violated RCW 71.05.745 and WAC 388-865-0526. Although the court agreed the original single bed certification approval was "facially invalid," it held that Evergreen did not "totally disregard" requirements of the involuntary treatment act.[7] As a result, the court denied C.V.'s motion. Following an evidentiary hearing, the court approved Evergreen's petition.

C.V. appeals.

## ANALYSIS

The parties agree this matter is not moot and is properly before us on review.[8]

The meaning of a statute is a question of law that we review de novo.[9] When engaging in statutory interpretation, a court's purpose is "'to determine and give effect to the intent of the legislature.'"[10] Legislative intent is derived, when

---

[7] Report of Proceedings (RP) (June 6, 2017) at 22-23.

[8] See In re Det. of M.K., 168 Wn. App. 621, 622, 629, 279 P.3d 897 (2012) ("[B]ecause an involuntary commitment order has collateral consequences for future commitment determinations," appeals after the expiration of the commitment period are not moot); see also In re Det. of Swanson, 115 Wn.2d 21, 25, 804 P.2d 1 (1990) (holding that an expired involuntary detention may be considered on appeal because "it involves issues of substantial and continuing public interest").

[9] State v. Engel, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009).

[10] State v. Evans, 177 Wn.2d 186, 192, 298 P.3d 724 (2013) (quoting State v. Sweany, 174 Wn.2d 909, 914, 281 P.3d 305 (2012)).

possible, "solely from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole."[11]

When interpreting agency regulations, we apply the same principles used to interpret statutes.[12] "If a regulation is unambiguous, intent can be determined from the language alone, and we will not look beyond the plain meaning of the words of the regulation."[13] "However, the plain meaning of a regulation may also be 'discerned from all that the [l]egislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'"[14]

Individuals detained for a 72-hour or 14-day period of involuntary treatment may only be treated at a licensed or certified evaluation and treatment facility.[15] When necessary, the Department of Social and Health Services may provide a single bed certification to a nonlicensed facility that is "willing and able to provide the person with timely and appropriate treatment."[16]

At the time of C.V.'s involuntary detention, WAC 388-865-0526 set additional requirements for single bed certification:

---

[11] Id.

[12] Ctr. for Envtl. Law v. Wash. Dep't of Ecology, 196 Wn. App. 360, 380, 383 P.3d 608 (2016), review denied, 187 Wn.2d 1021 (2017).

[13] Mader v. Health Care Auth., 149 Wn.2d 458, 473, 70 P.3d 931 (2003).

[14] Id. (quoting Thurston County v. Cooper Point Ass'n, 148 Wn.2d 1, 12, 57 P.3d 1156 (2002)).

[15] RCW 71.05.020(19), .150(2)(a), .240(3)(a).

[16] RCW 71.05.745(1).

(2) A single bed certification may be issued to the facility for timely and appropriate mental health treatment when the following requirements are met in each instance where such certification is sought for an individual:

(a) The facility that is the site of the proposed single bed certification confirms that it is willing and able to provide directly, or by direct arrangement with other public or private agencies, timely and appropriate mental health treatment to the consumer for whom the single bed certification is sought; and

(b) The request for single bed certification *describes why* the consumer meets at least one of the following criteria:

. . . .

(iii) The consumer can receive appropriate mental health treatment in a hospital with a psychiatric unit, or a hospital that is willing and able to provide timely and appropriate mental health treatment, or a psychiatric hospital, and the single bed certification will apply only to that facility.[17]

By the regulation's plain language, an applicant relying on section (2)(b)(iii) must "describe why" the individual requiring treatment can receive "timely and appropriate mental health treatment" at the hospital. The need for an individualized explanation is consistent with other provisions.

WAC 388-865-0526(3)(b)(i) requires that the facility receiving the single bed certification develop "[a]n individualized mental health treatment plan." Similarly, the authorizing statute requires that the certification "be specific to the patient receiving treatment."[18] Accordingly, the involuntary treatment act affords "[e]ach person involuntarily detained . . . the right to adequate care and *individualized*

---

[17] (Emphasis added.)

[18] RCW 71.05.745(2).

treatment."[19] In context, WAC 388-865-0526(2)(b) requires an individualized description of why the facility requesting single bed certification can meet the patient's individual medical needs.[20]

Here, the only information specific to C.V. in the application was his name, Social Security number, gender, birthdate, and legal status. It also included a preprinted statement citing the regulation and confirming that Evergreen was "willing and able to provide directly, or by direct arrangement with other public or private agencies, timely and appropriate mental health treatment to the [person] for whom the single bed certification is sought."[21] In addition, the form contained a set of checkboxes. The designated mental health professional checked the box stating, "The consumer can receive appropriate mental health treatment in . . . [a] hospital that can provide timely and appropriate mental health treatment."[22] The form did not provide a space to describe why Evergreen could meet C.V.'s individual needs, nor did the designated mental health professional include such a

---

[19] RCW 71.05.360(2) (emphasis added).

[20] The State argues RCW 71.05.745(2) "simply stands for the principle that a hospital cannot seek blanket [single bed certification] coverage from [the Department of Social and Health Services] for all the involuntarily detained patients it may be treating." Resp't's Br. at 11-12. This argument is inconsistent with the plain language of RCW 71.05.745(1). That provision exclusively uses individualized language, such as "a person suffering from a mental disorder" and "[t]he facility that is the proposed site of the single bed certification." RCW 71.05.745(1) (emphasis added). Also, the entire section addresses authorizing a single bed, for a single patient. The State's argument is inapposite as the plain language in RCW 71.05.745(1) precludes mass single bed certification applications.

[21] Clerk's Papers at 29.

[22] Id.

description.[23] In addition, the designated mental health professional did not attach any of C.V.'s medical records that might have allowed an individualized determination.

Notably, the Department of Social and Health services received the application at 3:43 p.m. and approved it at 3:45 p.m. The designated mental health professional received the approved application form at 3:50 p.m.

The trial court concluded the single bed certification application was "facially invalid."[24] We agree. The question is whether dismissal and release is the proper remedy under the involuntary treatment act.

The involuntary treatment act "impacts liberty interests and thus is strictly construed."[25] "Involuntary commitment for mental disorders constitutes a significant deprivation of liberty that requires due process protections."[26] In addition, an individual detained for incapacity "'has a constitutional right to receive such individual treatment as will give . . . a realistic opportunity to be cured or to improve his or her mental condition.'"[27]

---

[23] During oral argument, the State advised that the single bed certification request form has since been updated to include a box in which an applicant can provide individualized descriptive information about the person requiring treatment.

[24] RP (June 6, 2017) at 23.

[25] In re Det. of D.W. v. Dept. of Soc. & Health Svcs., 181 Wn.2d 201, 207, 332 P.3d 423 (2014).

[26] In re Det. of C.W., 147 Wn.2d 259, 277, 53 P.3d 979 (2002).

[27] D.W., 181 Wn.2d at 208 (internal quotation marks omitted) (quoting Ohlinger v. Watson, 625 F.2d 775, 778 (9th Cir. 1981)).

Dismissal of an involuntary treatment petition and release of the person subject to the petition is not often the proper remedy because of the importance of providing treatment to those requiring it. Dismissal is only appropriate when a petition fails on its merits[28] or when a person or entity seeking an involuntary commitment[29] totally disregards the involuntary treatment act requirements.[30] Specifically, the legislature requires that a court "construing the requirements of" the involuntary treatment act "must focus on the merits of the petition, except where the requirements have been totally disregarded, as provided in In re C.W., 147 Wn.2d 259, 281 (2002)."[31]

RCW 71.05.240 governs probable cause hearings on 14-day involuntary commitment petitions. RCW 71.05.240(3)(a) echoes a related provision, RCW 71.05.230(4)(b), describing the required content for a properly filed involuntary detention petition:

---

[28] See RCW 71.05.010(2) (courts should decide petitions "on their merits"); RCW 71.05.240(3)(a) (petitioner must prove need for 14-day commitment by a "preponderance of the evidence").

[29] Both public and private entities may be involved in the involuntary commitment process. See RCW 71.05.020(19) (defining "evaluation and treatment facility" as "any facility which can provide directly, or by direct arrangement with other public or private agencies, emergency evaluation and treatment").

[30] RCW 71.05.010(2); see C.W., 147 Wn.2d at 283 ("[D]ismissal may be appropriate in the few cases where [a petitioner] 'totally disregarded the requirements of the statute.'") (emphasis added) (quoting Swanson, 115 Wn.2d at 31); see also RCW 71.05.153(6) ("Dismissal of a commitment petition is not the appropriate remedy for a violation of the timeliness requirements of this section based on the intent of this chapter under RCW 71.05.010 except in the few cases where the facility staff or designated mental health professional has totally disregarded the requirements of the section.").

[31] RCW 71.05.010(2).

8

> [I]f the court finds by a preponderance of the evidence that [a] person, as a result of a mental disorder . . . presents a likelihood of serious harm, or is gravely disabled, . . . the court shall order that such person be detained for involuntary treatment not to exceed fourteen days in a facility licensed or certified to provide treatment by the department.

Although the involuntary treatment act must be strictly construed to protect the fundamental liberty interests of the persons detained,[32] our Supreme Court developed the "total disregard" standard based on the preferred policy of "deciding [involuntary commitment] cases on their merits."[33] The concern underlying this standard is that a person with mental health needs serious enough to require involuntary treatment should not be released merely because some statutory requirements have not been satisfied.[34]

In the context of civil commitments, the phrase "totally disregarded" originated in In re Detention of Swanson,[35] where our Supreme Court considered whether dismissal of an involuntary commitment petition was the appropriate remedy for a violation of the requirement that a hearing on a petition for a 14-day commitment be held within 72 hours of the start of detention.[36] The patient did not

[32] Swanson, 115 Wn.2d at 28.

[33] C.W., 181 Wn.2d. at 281 (citing In re Det. of G.V., 124 Wn.2d 288, 296, 877 P.2d 680 (1994)).

[34] See RCW 71.05.010(2) ("A presumption in favor of deciding petitions on their merits furthers both public and private interests because the mental and physical well-being of individuals as well as public safety may be implicated by the decision to release an individual and discontinue his or her treatment."); G.V., 124 Wn.2d at 296 (same).

[35] 115 Wn.2d 21, 804 P.2d 1 (1990).

[36] Id. at 22-24.

dispute the merits of the petition and only moved to dismiss because his hearing occurred between twenty minutes and two hours beyond the statutory deadline.[37] Because of due process concerns, the court weighed whether to evaluate the requirements under a standard of substantial compliance or of strict construction.[38] The patient argued that strict construction required dismissal.[39] The court concluded that a strict construction standard was correct for construing the involuntary treatment act requirements.[40] But it held dismissal was unwarranted because the State had not "totally disregarded the requirements of the statute" in the circumstances.[41]

Similarly, In re Detention of C.W. explained that "courts [weighing dismissal] should focus on the merits of the petition, the intent of the statute, and whether the State 'totally disregarded the requirements of the statute.'"[42] There, the trial court dismissed six petitions for involuntary commitment because the hospital did not conduct an initial evaluation of the patients within six hours of their detention.[43] To decide whether dismissal of the involuntary commitment petitions was warranted, our Supreme Court considered the statutory provisions at issue, the intent behind

---

[37] Id. at 24-25.

[38] Id. at 25.

[39] Id. at 25.

[40] Id. at 28.

[41] Id. at 31 (intent of the involuntary treatment act would be undermined if dismissal could "turn on the vagaries of scheduling, especially in these unpredictable and sensitive proceedings").

[42] 147 Wn.2d 259, 281, 53 P.3d 979 (2002) (quoting id.).

[43] Id. at 263.

10

those provisions, the need to have a "safeguard against abuse," and the facts of the instant case.[44] In light of the statutory treatment goals, the court concluded dismissal was inappropriate for mere violations of the six-hour requirement.[45] Because the patients did not prove the hospital totally disregarded the statute, dismissal was unwarranted.[46]

In In re Detention of D.W., our Supreme Court upheld the dismissal of 14-day involuntary commitment petitions where single bed certifications had been granted as "psychiatric boarding" of patients merely because there was a generalized lack of room at certified facilities.[47] The trial court also found the patients in facilities with single bed certifications were not receiving appropriate treatment or care for their mental illness.[48] The Supreme Court recognized that "[p]atients may not be warehoused without treatment because of lack of funds."[49]

C.V. asks us to dismiss the petition for a 14-day commitment because Evergreen's facially invalid single bed certification violated the precondition in RCW 71.05.230(3) that the treating facility be certified. C.V. argues that dismissal is warranted because a valid single bed certification is a fundamental requirement

---

[44] Id. at 281-84.

[45] Id. at 281-83.

[46] Id. at 284.

[47] 181 Wn.2d 201, 211, 332 P.3d 423 (2014).

[48] Id. at 206.

[49] Id. at 208. The legislature has since amended the involuntary treatment act to allow single bed certifications when no room is available at a certified facility and appropriate treatment and care can be provided with the single bed certification. RCW 71.05.745(1).

11

of the involuntary treatment act. Further, C.V. notes that proper individualized descriptions of persons being detained are necessary to ensure that the professionals approving single bed certifications have the information necessary to exercise their professional judgment. Underlying these contentions is C.V.'s "constitutional right to receive 'such individual treatment as will give [C.V.] a realistic opportunity to be cured or to improve his or her mental condition.'"[50]

The involuntary treatment act sets out procedural requirements for 14-day commitment petitions in RCW 71.05.230. "A petition may only be filed" if all nine "conditions" are met, including that "[t]he facility providing intensive treatment is certified to provide such treatment by the department."[51]

The procedural deficiency here can be can be compared with a claimant's failure to follow the preconditions to a tort claim against the State. All tort claims against the State "must be presented" to the office of risk management before they can be filed.[52] Dismissal is the proper remedy for a substantive claim that does not comply with the procedural requirements of RCW 4.92.100 and RCW 4.92.110.[53] Dismissal of a civil commitment petitions is evaluated under a

---

[50] D.W., 181 Wn.2d at 208 (quoting Ohlinger, 625 F.2d at 778).

[51] RCW 71.05.230(3).

[52] RCW 4.92.100(1), .110.

[53] Hyde v. Univ. of Wash. Med. Ctr., 186 Wn. App. 926, 929, 347 P.3d 918 (2015); RCW 4.92.100, .110. Notably, courts must "liberally construe" these procedural requirements "so that substantial compliance will be deemed satisfactory." RCW 4.92.100(3). "Substantial compliance . . . means that the 'statute has been followed sufficiently so as to carry out the intent for which the statute was adopted.'" Lee v. Metro Parks Tacoma, 183 Wn. App. 961, 967-68, 335 P.3d 1014 (2014) (quoting Banner Realty v. Dep't of Revenue, 48 Wn. App. 274, 278, 738 P.2d 279 (1987)). Lee addressed tort claim filing preconditions

different standard. Unlike the tort claim precondition, courts may dismiss an involuntary commitment petition only when the statutory requirements are totally disregarded.

Although the single bed certification form used for C.V. violated involuntary treatment act requirements, the violation does not rise to the level of total disregard under these circumstances. As in C.W., Evergreen's conduct did not violate C.V.'s constitutional liberty interests or undermine the involuntary treatment act's purpose. Unlike D.W., C.V. was not denied any psychiatric or therapeutic care for his mental illness.

As the State acknowledges, detaining a person at an uncertified facility without a single bed certification would constitute total disregard of the involuntary treatment act. The circumstances here differ significantly.[54] The trial court carefully reviewed the detailed records of C.V.'s diagnosis, care, and treatment at Evergreen when considering his motion to dismiss.[55] A court with such detailed information about an individual's specific treatment needs and a facility's specific

---

against municipalities pursuant to RCW 4.96.020, 183 Wn. App. at 967, but the "substantial compliance" standard is identical to RCW 4.92.100(3).

[54] Of course, the State should also be alert to the risks presented by any cavalier, uninformed, or nonprofessional issuances of single bed certifications.

[55] The trial court reviewed C.V.'s medical records and found that C.V. received two "fairly lengthy" psychiatric evaluations while in Evergreen on a 72-hour involuntary commitment. RP (June 6, 2017) at 25. And the psychiatrist relied on detailed medical notes to develop an individual treatment plan. Based on this, and the hundreds of pages of medical records submitted in evidence, the court concluded that the involuntary treatment act requirements had not been totally disregarded.

treatment efforts is well situated to analyze whether the involuntary treatment act requirements were totally disregarded.

It is problematic that the Department of Social and Health Services issued a single bed certificate after a two-minute review of a "check the box" form. The purpose of the descriptive requirements in RCW 71.05.745 and the related regulation is to promote the exercise of meaningful, professional judgment by a qualified individual.[56] Individualized facts are required to accurately assess whether an individual's specific treatment needs may be timely and appropriately met by the particular facility applying for a single bed certificate.[57]

But the trial court's review was consistent with the legislature's direction to dismiss petitions for involuntary commitment only where there was a total disregard of involuntary treatment act requirements.[58] Judicial review of C.V.'s treatment records adequately safeguarded C.V.'s interests.[59]

---

[56] See WAC 388-865-0526(3) (providing timely and appropriate mental health treatment at a facility operating under a single bed certification requires the availability of professionals to consult, observe, evaluate, and assess the person).

[57] See RCW 71.05.230(1) (requiring "professional staff of the facility providing evaluation services" to analyze the person's needs).

[58] RCW 71.05.010(2).

[59] See C.W., 147 Wn.2d at 283 ("[T]he purpose of the [involuntary treatment act] as well as the presumption in favor of deciding cases on the merits tends to weigh against dismissing all cases in which [the involuntary treatment act] is violated. Furthermore, allowing dismissal in cases where the professional staff totally disregarded the statutory requirements serves as a general safeguard against abuse.").

## CONCLUSION

Evergreen and the Department of Social and Health Services disregarded some requirements of the involuntary treatment act. But dismissal of a petition for involuntary commitment of a person who presents a likelihood of serious harm or is gravely disabled is unwarranted unless the petition fails on its merits or the person or entities involved totally disregarded the requirements of the involuntary treatment act. Under the circumstances here, no one totally disregarded the requirements of the involuntary treatment act. Dismissal is not the proper remedy. Accordingly, we affirm.

WE CONCUR: