# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of<br><br>N.G. and C.M.,<br><br>                          Appellant. | No. 54362-1-II<br>consol. with<br>No. 54949-2-II<br><br><br>PUBLISHED OPINION |

MAXA, P.J. – This consolidated case involves two people, NG and CM, who remained involuntarily committed at Western State Hospital (WSH) for over 30 days after their 180-day involuntary commitment period had expired. When WSH discovered what had happened, WSH had NG and CM evaluated for 72-hour detentions and filed new petitions for 14 days of involuntary treatment under new cause numbers. Both NG and CM filed motions to dismiss the 14-day petitions. The trial courts denied NG's motion to dismiss and granted CM's motion to dismiss.

The parties agree that WSH violated provisions of the Involuntary Treatment Act (ITA), chapter 71.05 RCW, in both cases by continuing to detain NG and CM without filing new petitions for an additional 180 days of involuntary commitment or releasing them. However, RCW 71.05.010(2) provides that courts must focus on the merits of the petition when construing the requirements of the ITA "except where requirements have been totally disregarded." The legislature and courts have not defined the term "totally disregarded."

We hold that dismissal of a new 14-day petition for involuntary treatment under a new cause number is an available remedy when a committed person is detained improperly beyond the end date of an involuntary commitment order, but only if the petitioner has totally disregarded ITA requirements. In addition, we hold that in determining whether a petitioner has totally disregarded ITA requirements, a trial court must consider the totality of the circumstances. These circumstances include (1) whether the violation of the statutory requirements occurred knowingly, willfully or through gross negligence; (2) the extent of the deprivation of the committed person's liberty; (3) the extent to which the petitioner's conduct and the committed person's requested remedy are protective of the committed person's health and safety and reflect appropriate treatment for the committed person; and (4) the extent to which the petitioner's conduct and the committed person's requested remedy are protective of the safety of the public.

Because it is unclear what standard the trial courts applied in these cases, we remand both NG's and CM's cases for proceedings consistent with this opinion.

FACTS

*NG – Background*

NG suffered from schizophrenia and had been a patient at WSH since 2014 pursuant to various involuntary commitment orders. In June 2019, the trial court granted a petition for 180 days of involuntary commitment under the 2014 cause number on the grounds that NG was gravely disabled. NG's 180-day commitment expired on December 24. However, NG was not discharged on that date and no additional petition for further detention had been filed at that time.

2

No. 54362-1-II / 54949-2-II

On January 23, 2020, WSH discovered that NG's 180-day involuntary commitment had expired without a new 180-day petition being filed. However, WSH did not release NG. Instead, a designated crisis responder (DCR) was contacted to evaluate NG for a 72-hour emergency detention for evaluation and treatment as allowed in former RCW 71.05.150(1) (2019). The DCR evaluated NG and petitioned the trial court for a 72-hour detention under a new 2020 cause number.

On January 27, Dr. Peter Bingcang and Dr. Jeff Crinean filed a petition for 14-days of involuntary treatment under the 2020 cause number. NG filed a motion to dismiss the 14-day petition on the grounds that WSH had totally disregarded the ITA's requirements.

The trial court heard oral argument on the motion to dismiss and also heard testimony from Dr. Crinean. Dr. Crinean explained that the error had occurred because of a computer problem. He stated that WSH's database for the petitions had not been maintained for five years and that WSH's normal protocol had broken down due to an unreliable computer system. Dr. Crinean admitted that he partially was at fault and that he was not as diligent as he should have been in monitoring NG's case. The trial court denied the motion to dismiss the 14-day petition. The court noted that the doctors and people working with NG had not engaged in any intentional conduct.

The trial court proceeded with a probable cause hearing regarding the 14-day petition for involuntary treatment. The court found that NG was gravely disabled and entered an order to involuntarily treat NG for up to 14 days.

Dr. Bingcang and Dr. Crinean subsequently filed a petition for 90-day involuntary treatment at WSH. At the beginning of the hearing on the 90-day petition, NG referenced the earlier motion to dismiss the 14-day petition and stated that she took exception to the ruling on

3

that motion. The trial court again found that NG was gravely disabled and entered an order to involuntarily commit NG for up to 90 days.

NG appeals the trial court's two orders committing her to 14 days and an additional 90 days of involuntary treatment at WSH.

*CM – Background*

CM was diagnosed with schizoaffective bipolar disorder and had been a patient at WSH since being involuntarily committed in January 2018 under a 2017 cause number. On December 26, 2019, the trial court granted a petition for 180 days of involuntary treatment under the 2017 cause number on the grounds that CM was gravely disabled. CM's 180-day petition expired on June 23, 2020. However, CM was not discharged on that date and no additional petition for further detention had been successfully filed at that point.

At some point, WSH discovered that CM's 180-day involuntary commitment had expired without a new 180-day petition being filed. However, WSH did not release CM. Instead, on July 27, WSH had a DCR evaluate CM for a 72-hour detention. The DCR petitioned the trial court for a 72-hour detention for evaluation and treatment under a new 2020 cause number. The next day, Dr. Mary Zesiewicz and Dr. Tiffany Mohr filed a petition for 14 days of involuntary treatment at WSH.

CM filed a motion to dismiss the 14-day petition on the grounds that WSH had totally disregarded the ITA's requirements. The petitioners' response provided no explanation as to why CM was detained after his 180-day involuntary commitment had expired. They argued only that dismissal of the 14-day petition was an inappropriate remedy for the violation.

The trial court heard oral argument on the motion to dismiss. The court noted that CM and the petitioners had submitted argument on the motion to dismiss and instructed the parties to

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

provide a very brief oral argument. The petitioners did not offer to call witnesses to explain why CM was detained after the expiration of CM's 180-day involuntary commitment or otherwise make any request to explain the situation.

The trial court granted CM's motion to dismiss the 14-day petition. The court found that the unlawful detention under the expired involuntary commitment was a total disregard of the statutory requirements and rights set forth in the ITA. The petitioners then requested to supplement the record with declarations so there would be a complete factual record for any appeal, which the court granted.

The petitioners subsequently filed three declarations to supplement the record. Dr. Wendi Wachsmuth stated in her declaration that she completed a mental status examination with CM on June 1 for purposes of filing a new 180-day petition for involuntary treatment. She stated that she completed the new 180-day commitment petition on June 2 and then emailed the petition to the court scheduler that same day. Katelyn Carroll, a social worker at WSH, stated in her declaration that she served CM in person with the 180-day petition on June 4.

Dr. Faye Turley, the director of psychology at WSH, stated that she investigated why CM's additional 180-day petition for involuntary treatment was not filed with the court. She attached a copy of an email that was sent by the WSH hearings scheduler to the court clerk, defense counsel, and the office of the attorney general on June 4. The email referenced petitions that were to be filed on that date and included CM's name in the body of the email. Dr. Turley stated, "It is apparent that this email did not reach a number of its intended recipients, possibly due to an email system glitch." Clerk's Papers at 193.

No. 54362-1-II / 54949-2-II

After these declarations were filed, the trial court did not take any action regarding the court's dismissal of the 14-day petition. And the petitioners did not file a motion for reconsideration on the court's order granting the motion to dismiss.

Dr. Zesiewicz and Dr. Mohr appeal the trial court's order dismissing the 14-day petition regarding CM.

ANALYSIS

A.     INVOLUNTARY TREATMENT ACT

The ITA governs the temporary detention for evaluation and treatment of persons with mental disorders and establishes procedures for 72-hour, 14-day, 90-day, and 180-day involuntary commitments. The legislature provided a statement of legislative intent for the ITA, including:

> (a) To protect the health and safety of persons suffering from behavioral health disorders and to protect public safety through use of the parens patriae and police powers of the state;
> (b) To prevent inappropriate, indefinite commitment of persons living with behavioral health disorders . . . ;
> (c) To provide prompt evaluation and timely and appropriate treatment of persons with serious behavioral health disorders;
> (d) To safeguard individual rights;
> (e) To provide continuity of care for persons with serious behavioral health disorders.

RCW 71.05.010(1).[1]

"Involuntary commitment for mental disorders constitutes a significant deprivation of liberty that requires due process protections." *In re Det. of C.W.*, 147 Wn.2d 259, 277, 53 P.3d 979 (2002). Because the ITA impacts liberty interests, it must be strictly construed. *In re Det. of D.W.*, 181 Wn.2d 201, 207, 332 P.3d 423 (2014).

---

[1] RCW 71.05.010(1) was amended in 2020. LAWS OF 2020, ch. 302, § 1. Because the amendments are not material in this case, we cite to the current version of the statute.

6

No. 54362-1-II / 54949-2-II

>     1.    Petitions for Involuntary Commitment

A DCR can file a petition for initial detention when they receive information that the person, because of a mental disorder, "presents a likelihood of serious harm or is gravely disabled." Former RCW 71.05.150(1). The trial court may enter an order for a 72-hour commitment period for evaluation and treatment when the petition has alleged sufficient probable cause and the person subject to the petition has refused to accept appropriate evaluation and treatment. Former RCW 71.05.150(2)(a).[2]

In addition, a DCR can cause a person to be taken into emergency custody for up to 72 hours when they receive information that the person, because of a mental disorder, "presents an imminent likelihood of serious harm, or is in imminent danger because of being gravely disabled." Former RCW 71.05.153(1) (2019).

A person detained for 72 hours for evaluation and treatment may be committed for 14 additional days of involuntary treatment. Former RCW 71.05.230 (2018). If a 14-day petition is filed, the trial court must hold a probable cause hearing within 72 hours of the initial detention. Former RCW 71.05.240(1) (2019). At the probable cause hearing, the court may order that the person be detained for involuntary treatment if it determines by a preponderance of the evidence that the person has a mental disorder that presents a likelihood of serious harm or the person is gravely disabled. Former RCW 71.05.240(4)(a). There is no right to a jury trial for a probable cause hearing on a 14-day petition. *In re Det. of S.E.*, 199 Wn. App. 609, 612-13, 400 P.3d 1271 (2017).

---

[2] This statute was amended in 2021 and the 72-hour detention was extended to 120-hours. RCW 71.05.150(2)(a) (2021).

An evaluating professional may file for a petition for an additional period of involuntary treatment at any time during a person's 14 day involuntary treatment period. Former RCW 71.05.290(1) (2017). The petition must be based on one of several grounds, including that the person subject to the petition is gravely disabled. Former RCW 71.05.280(4) (2018). The petition for 90 days of additional involuntary treatment must be filed at least three days before the expiration of the 14-day period. Former RCW 71.05.300(1) (2019). The court must schedule a hearing, where the petitioner bears the burden of showing by clear, cogent, and convincing evidence the grounds for continued commitment. Former RCW 71.05.310 (2012). The committed person has a right to a jury trial. Former RCW 71.05.310.

If an evaluating professional believes that it is necessary to involuntarily commit a person beyond the 90-day period, they may file for a petition seeking an additional 180-day involuntary commitment. Former RCW 71.05.320(4), (6) (2018). This petition must be filed at least three days before the end of the commitment period. *In re Det. of Dydasco*, 135 Wn.2d 943, 952, 959 P.2d 1111 (1998). At a hearing, the petitioner must show by clear, cogent, and convincing evidence that further detention is required pursuant to one of several grounds, including that the person continues to be gravely disabled. Former RCW 71.05.310; former RCW 71.05.320(4)(d). Successive 180-day petitions for further involuntary treatment may be filed based on the same grounds. Former RCW 71.05.320(6)(b).

If after a period of involuntary commitment has expired and no petition for additional involuntary treatment has been filed, former RCW 71.05.320(4) states that "[t]he person shall be released from involuntary treatment at the expiration of the period of commitment." Former RCW 71.05.320(6)(b) also states that "[a]t the end of the one hundred eighty day period of commitment . . . the committed person shall be released unless a petition for an additional one

No. 54362-1-II / 54949-2-II

hundred eighty day period of continued treatment is filed and heard in the same manner as provided in this section." Former RCW 71.05.320(8) further provides that "[n]o person committed as provided in this section may be detained unless a valid order of commitment is in effect."

RCW 71.05.510 states: "Any individual who knowingly, willfully or through gross negligence violates the provisions of this chapter by detaining a person for more than the allowable number of days shall be liable to the person detained in civil damages."

2. Presumption in Favor of Deciding Cases on the Merits

RCW 71.05.010(2) states:

> When construing the requirements of this chapter the court must focus on the merits of the petition, *except where requirements have been totally disregarded*, as provided in *In re C.W.*, 147 Wn.2d 259, 281 (2002). A presumption in favor of deciding petitions on their merits furthers both public and private interests because the mental and physical well-being of individuals as well as public safety may be implicated by the decision to release an individual and discontinue his or her treatment.

(Emphasis added.) In *C.W.*, the Supreme Court suggested that "in determining whether a case is to be dismissed, courts should focus on the merits of the petition, the intent of the statute, and whether the State 'totally disregarded the requirements of the statute.' " 147 Wn.2d at 281 (quoting *In re Det. of Swanson*, 115 Wn.2d 21, 31, 804 P.2d 1 (1990)).

RCW 71.05.010(2) reflects the principle that "[d]ismissal of an involuntary treatment petition and release of the person subject to the petition is not often the proper remedy because of the importance of providing treatment to those requiring it." *In re Det. of C.V.*, 5 Wn. App. 2d 814, 822, 428 P.3d 407 (2018).

9

No. 54362-1-II / 54949-2-II

B.      DISMISSAL AS AN AVAILABLE REMEDY FOR ITA VIOLATIONS

The State argues that dismissal of a 14-day or 90-day petition filed under a new cause number is not an available remedy for ITA violations regarding the failure to release a committed person when a 180-day involuntary commitment ordered under a previous petition has ended.  We disagree.

Neither the ITA nor any cases address whether or not dismissal of a new 14-day or 90-day petition under a new cause number is an available remedy for ITA violations regarding an involuntary commitment under a previous petition.  No ITA provision addresses the situation where a committed person's involuntary commitment has expired and is not properly renewed, but the petitioners want to continue to detain them.  And all the cases addressing ITA violations involve motions to dismiss for violations under the same cause number.  *E.g.*, *C.W.*, 147 Wn.2d at 263.

We conclude that dismissal of the new 14-day petitions for NG and CM (and the 90-day petition for NG) was an available remedy for WSH's ITA violations for several reasons.

First, the 2020 petitions filed regarding NG and CM were not really "new" cases.  At the time of the 2020 petitions, NG and CM continued to be detained under the previous cause numbers and they remained at WSH the entire time.  And the new petitions did not seek involuntary commitments on any different basis.  Regardless of the new cause numbers, WSH actually sought to extend the existing unlawful detentions.  Therefore, the new cases were a direct continuation of the previous cases.

Second, the ITA does not provide support for the procedure WSH used once it discovered the unlawful detentions.  Nothing in the ITA allows for a 180-day commitment to be followed immediately, without a break, by a 72-hour detention and a 14-day commitment.  Instead, former

10

RCW 71.05.320(6)(b) states that a committed person "shall be released" at the end of the 180 day commitment period and former RCW 71.05.320(8) states that "[n]o person committed as provided in this section may be detained unless a valid order of commitment is in effect."

Third, precluding dismissal of a new petition as a remedy for ITA violations would leave committed persons with little protection against even deliberate violations. A facility could completely ignore ITA requirements for continued detention of involuntarily committed persons without any meaningful repercussions, knowing that the detention could be extended simply by obtaining a new 72-hour detention and filing a new 14-day petition. This result would be inconsistent with two of the statements of legislative intent for the ITA: "[t]o prevent inappropriate, indefinite commitment of persons living with behavioral health disorders" and "[t]o safeguard individual rights." RCW 71.05.010(1)(b), (d).

The dismissal remedy involves two caveats. First, RCW 71.05.010(2) makes it clear that a new involuntary commitment petition can be dismissed as a remedy only if the petitioner has "totally disregarded" ITA requirements in improperly detaining a committed person. That requirement is discussed below.

Second, dismissal of a new involuntary commitment petition does not mean that the committed person cannot be committed again at some future time. As the court stated in *C.W.*, "a question as to whether the professional staff may have detained a person in violation of the statute *should not affect whether the person meets the statutory requirements for further detention*." 147 Wn.2d at 283 (emphasis added). NG and CM argue only that if another 180-day petition is not filed in a timely manner, the committed person must be released as the ITA provides. After the release from detention has occurred, if appropriate, a new 72-hour detention can be ordered and a new 14-day petition can be filed.

11

No. 54362-1-II / 54949-2-II

The State argues that allowing dismissal of a new 14-day petition as a remedy for ITA violations could interfere with a primary goal of the ITA – to provide treatment for and to protect gravely disabled people. As noted above, the first provision of the ITA's statement of legislative intent is "[t]o protect the health and safety of persons suffering from behavioral health disorders and to protect public safety." RCW 71.05.010(1)(a). Another statement of intent is "[t]o provide continuity of care for persons with serious behavioral health disorders." RCW 71.05.010(1)(e). Requiring that severely disabled people be released because of past ITA violations even though continued commitment is necessary and appropriate could place the health and safety of gravely disabled persons and public safety at risk.

The State's argument has some merit. However, the requirement that a petition can be dismissed only if the petitioner has totally disregarded ITA requirements mitigates this concern. As discussed below, the health and safety of the committed person and public safety are two factors that must be considered in determining whether a petitioner had totally disregarded ITA requirements.

The State also emphasizes that unlawfully detained patients have an express statutory remedy under the ITA: an action for civil damages under RCW 71.05.510. However, nothing in the ITA suggests that this remedy is exclusive.

Finally, the State points to practical considerations. Is a facility required to release a gravely disabled person who needs treatment and is completely unable to provide for their own health and safety needs in the community? If a patient must be released before a new petition can be filed, how long must the release last? Can a DCR be waiting across the street? These are legitimate questions. But because these issues are not presented in these cases, we will not address them in the abstract.

No. 54362-1-II / 54949-2-II

We hold that dismissal of a 14-day or 90-day petition under a new cause number is an available remedy for a violation of the ITA regarding an involuntary commitment under a previous petition, but only if the petitioner has totally disregarded ITA requirements.[3]

C.      TOTAL DISREGARD OF ITA REQUIREMENTS

The parties disagree regarding the meaning of the phrase "totally disregarded" in RCW 71.05.010(2). We hold that in determining whether a petitioner has totally disregarded ITA requirements, a trial court must consider the totality of the circumstances in light of the factor we discuss below.

1.    Statutory Interpretation

Questions of statutory interpretation are reviewed de novo. *PeaceHealth St. Joseph Med. Ctr. v. Dep't of Revenue*, 196 Wn.2d 1, 7, 468 P.3d 1056 (2020). The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent. *Id.* This requires looking at the plain language of the statute, the context of the statute, any related statutory provisions, and the statutory scheme as a whole. *Id.* at 7-8. "[A]n enacted statement of legislative purpose is included in a plain reading of the statute." *G-P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 310, 237 P.3d 256 (2010).

If the legislature has not defined a statutory term, we apply the term's plain and ordinary meaning. *Clark County v. Portland Vancouver Junction R.R., LLC*, 17 Wn. App. 2d 289, 295, 485 P.3d 985 (2021). We may consider dictionary definitions to determine the ordinary meaning of undefined terms. *Id.*

---

[3] NG and CM argue in the alternative that if dismissal of new 14-day petitions is not an available remedy for the violation of ITA requirements in previous cases, the statute is unconstitutional as applied. Because we hold that dismissal is an available remedy, we do not address this argument.

13

No. 54362-1-II / 54949-2-II

"Because civil commitment statutes involve a deprivation of liberty, they should be construed strictly." *C.W.*, 147 Wn.2d at 272. However, we still must keep the legislature's intent in mind to avoid absurd results. *Id.*

2. Meaning of "Totally Disregarded"

Several cases have addressed whether a petitioner has totally disregarded ITA requirements, but none of them addressed the meaning of "totally disregarded." *See C.W.*, 147 Wn.2d at 281-83; *Swanson*, 115 Wn.2d at 31-33; *C.V.*, 5 Wn. App. 2d at 826-28; *In re Det. of K.R.*, 195 Wn. App. 843, 846-48, 381 P.3d 158 (2016).

In addition, the term "totally disregarded" does not have an obvious, plain meaning. Therefore, we rely on the language of RCW 71.05.010(2) and the statement of legislative intent in RCW 71.05.010(1) to develop a framework for determining when a petitioner has totally disregarded ITA requirements.

a. Petitioner's Conduct

RCW 71.05.010(2) focuses on whether the petitioner (or a predecessor) has totally disregarded ITA requirements. Therefore, the first factor a trial court must consider is the petitioner's conduct.

In determining what type of conduct may constitute a total disregard, we turn first to dictionary definitions. *See Portland Vancouver Junction*, 17 Wn. App. 2d at 295. *Webster's Dictionary* provides three definitions for the verb "disregard": "to treat without fitting respect or attention," "to treat as unworthy of regard or notice," and "to give no thought to: pay no attention." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 655 (2002). The noun "disregard" is defined to include "intentional slight or neglect." WEBSTER'S at 655.

14

No. 54362-1-II / 54949-2-II

Initially, it is clear that "totally disregarded" must mean something more than a failure to satisfy certain statutory requirements. In other words, the mere fact that a statutory requirement has not been satisfied does not automatically rise to the level of total disregard. This conclusion is consistent with case law. *See C.W.*, 147 Wn.2d at 282-83; *C.V.*, 5 Wn. App. 2d at 826, 828.

The first two definitions of "disregard" encompass deliberate conduct; a knowing or willful failure to pay attention to something. But the second two definitions refer to something akin to gross negligence: paying no attention to something or intentionally neglecting something. None of the definitions suggest that mere negligence constitutes disregard. And the inclusion of "totally" makes it clear that some higher standard than negligence is required.

In addition to consulting the dictionary, we consider other related ITA provisions. *See PeaceHealth*, 196 Wn.2d at 7-8. As noted above, RCW 71.05.510 states a standard for civil liability for unlawful detention. Civil liability is imposed on a person who "knowingly, willfully or through gross negligence" violates ITA provisions. RCW 71.05.510. This standard is consistent with the dictionary definitions of "disregarded."

Considering the dictionary definitions and the civil liability standard in RCW 71.05.510, we hold that the proper standard for evaluating a petitioner's conduct is whether the violation of the statutory requirements occurred knowingly, willfully or through gross negligence.

b. Additional Factors

Even if a petitioner has violated ITA requirements knowingly, willfully or through gross negligence, RCW 71.05.010(1) and the second sentence of RCW 71.05.010(2) indicate that such conduct does not automatically constitute a total disregard of those requirements. Both subsections relate to legislative purpose, which is included in a plain language analysis. *G-P*

15

*Gypsum*, 169 Wn.2d at 310. Therefore, the factors identified in these subsections also must be considered.

First, two of the core purposes of the ITA are to "prevent inappropriate, indefinite commitment of persons living with behavioral health disorders" and to "safeguard individual rights." RCW 71.05.010(1)(b), (d). Therefore, the extent of the committed person's deprivation of liberty as a result of an ITA violation is an important consideration. The longer the unlawful detention, the more likely an ITA violation will be considered a total disregard of ITA requirements. Conversely, a de minimis detention will be unlikely to rise to the level of total disregard.

Second, additional core purposes of the ITA are to "protect the health and safety," "provide . . . appropriate treatment," and to "provide continuity of care" of persons suffering from behavioral health disorders. RCW 71.05.010(1)(a), (c), (e). Therefore, the health and safety of the committed person and appropriate treatment for the person must be considered. Whether the petitioner's conduct and the committed person's requested remedy are protective of the committed person's health and safety and is essential for that person's appropriate treatment may mitigate an ITA violation.

Third, another core purpose of the ITA is to "protect public safety." RCW 71.05.010(1)(a). Therefore, the safety of the public must be considered. Whether the petitioner's conduct and the committed person's requested remedy are protective of public safety may mitigate an ITA violation.

The second and third factors are expressly referenced in RCW 71.05.010(2): "A presumption in favor of deciding petitions on their merits furthers both public and private interests because *the mental and physical well-being of individuals as well as public safety may*

16

No. 54362-1-II / 54949-2-II

*be implicated* by the decision to release an individual and discontinue his or her treatment."

(Emphasis added.)

        c.    Summary

We hold that in determining whether a petitioner has totally disregarded ITA

requirements, a trial court must consider the totality of the circumstances. These circumstances

include (1) whether the violation of the statutory requirements occurred knowingly, willfully or

through gross negligence; (2) the extent of the deprivation of the committed person's liberty; (3)

the extent to which the petitioner's conduct and the committed person's requested remedy are

protective of the committed person's health and safety and reflect appropriate treatment for the

committed person; and (4) the extent to which the petitioner's conduct and the committed

person's requested remedy are protective of the safety of the public.

The weight given to each factor necessarily will depend on the facts of each particular

case. And we will review the trial court's totality of the circumstances analysis and ruling

regarding whether a petition has totally disregarded ITA requirements for an abuse of discretion.

        3.    Presentation of Evidence Regarding Total Disregard

The State argues that the trial court erred in CM's case by failing to allow the petitioners

the opportunity to present evidence regarding why an improper detention occurred before ruling

on a motion to dismiss based on a total disregard of the ITA's requirements. CM argues that the

trial court never prohibited the presentation of evidence on the motion to dismiss.

The ITA does not provide any direction regarding the procedure for addressing a motion

to dismiss a petition for involuntary commitment based on an argument that the petitioner has

totally disregarded the ITA's requirements. However, the total disregard determination is a

factual one. Before a trial court can make this factual determination, it necessarily must be

17

presented with and consider the specific facts regarding why the petitioner violated ITA requirements. Making the total disregard determination as a matter of law without considering evidence would be inconsistent with the presumption set forth in RCW 71.05.010(2).

Given the posture of this case, we need not decide whether the trial court erred in CM's case. But we emphasize that trial courts must allow both the petitioner and the committed person the opportunity to present evidence regarding why an improper detention occurred before ruling on a motion to dismiss based on a total disregard of the ITA's requirements.

4.      Remand for Determination

Here, it is unclear what standard the trial courts applied in making their "totally disregarded" rulings.

In NG's case, the trial court noted that the doctors and persons working with NG did not engage in any *intentional* acts. This statement at least suggests that the court did not recognize that gross negligence also could constitute total disregard. And the court did not consider the other factors that we identify above.

In CM's case, the trial court did not explain the standard it was applying. However, the court ruled without hearing any evidence regarding the reasons for CM's unlawful detention, which suggests that the court did not consider the totality of the circumstances.

Because the record does not show what standard the trial courts applied in making their totally disregarded determination, we remand for the courts in both cases to determine if the petitioners totally disregarded the ITA requirements consistent with the standard articulated in this opinion.

No. 54362-1-II / 54949-2-II

CONCLUSION

We remand both NG's and CM's cases for proceedings consistent with this opinion.

_____
MAXA, P.J.

We concur:

_____
VELJACIC, J.

_____
PRICE, J.

19