## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Detention of: | No.  55698-7-II |
| R.F. | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — RF was detained under the Involuntary Treatment Act (ITA) for being gravely disabled.  A commissioner granted a petition to involuntarily commit him for 14 days. RF appeals an order denying his motion to revise the commissioner's order detaining him for 14 days.

RF had filed a motion to dismiss the petition because he was involuntarily detained for more than the statutorily prescribed 72-hour period prior to his detention hearing.  The commissioner denied his motion to dismiss, evaluated the petition on its merits, and detained RF. After his release, RF filed a motion to revise the commissioner's decision, but the trial court denied his motion.  On appeal, RF argues that (1) the trial court erred in denying his motion to revise because the petitioner "totally disregarded" the timing requirements of the ITA, (2) Pierce County's policy of not hearing involuntary detention petitions on Mondays violates the ITA, and (3) liberty interests must be prioritized over scheduling conflicts.

We affirm the trial court's denial of RF's motion to revise.

### FACTS

On Tuesday, December 22, 2020, a crisis responder evaluated and detained RF on a

72-hour involuntary commitment hold. The responder served RF with his notice of emergency detention and petition for initial detention on December 22 at noon. The petition alleged:

> [RF] was referred for an ITA evaluation by Preston, SW at Wellfound, on 12/21/20 at 1455. The respondent had been admitted to Wellfound on 12/16/20 after he had repeated [emergency department] visits due to paranoia and odd behavior in the community prior. [RF] was reported to have increased paranoia, knocking on people's doors, going into apartments, and having internal stimuli related to a manic episode. [RF] was positive for THC[1] and had no other medical issues which could better describe the presentation. [RF] has been treated in the community at Cascade Mental Health with the following medications; clonazepam, lamotrigine, fluoxetine, and lorazepam. [RF] lives in the community with his wife. [RF] has been asking to leave the facility and the facility has increasing concerns about his continued stability.
>
> . . . .
>
> [RF] reported he was confused and afraid which had rendered the police to be called and for him to end up in the [emergency department]. [RF] reported he was very paranoid in the community with a compulsion to exercise to get rid of the feelings.

CP at 2, 4. RF was reassessed on Thursday, December 24, at 10:30 a.m., and professionals at the mental health facility recommended RF be involuntarily detained for a 14-day period of in-patient treatment due to ongoing symptoms.

RF's 72-hour detention period expired on Monday, December 28, at noon.[2] That same day at 1:45 p.m., two doctors from Wellfound, a facility certified by the Department of Social and Health Services, filed a petition for an additional 14 days of detention. The trial court held a probable cause hearing the next day on Tuesday, December 29, at 9:00 a.m. At the time the State scheduled RF's hearing, Pierce County Superior Court held mental health involuntary

---

[1] THC is tetrahydrocannabinol, the psychoactive component in marijuana.

[2] RF's 72-hour commitment period would have ended on Friday, December 25, but because RCW 71.05.180 excludes holidays and weekends, RF's 72-hour detention expired the following Monday, December 28.

commitment hearings only on Tuesdays, Wednesdays, and Fridays. RF's case was set for the next available calendar day on Tuesday, December 29.

At the detention hearing before a court commissioner, RF moved to dismiss the petition because he had been held beyond the permissible 72-hour period. The commissioner denied the motion to dismiss and ordered that RF be detained for an additional 14 days because he was gravely disabled.[3]

After RF was released from detention, he filed a motion to revise the commissioner's denial of his motion to dismiss. The trial court denied RF's motion to revise, noting that "the Court finds no 'total disregard' by the petitioners. The petition was filed on the first court day after 72 hours and set for the first available docket." Clerk's Papers (CP) at 89.

RF appeals the trial court's order denying his motion to revise.

ANALYSIS

I. INVOLUNTARY TREATMENT ACT (ITA)

At the time RF was detained, an initial involuntary commitment could not exceed 72 hours, excluding weekends and holidays. Former RCW 71.05.180 (2019).[4] The statute required the court to hold a hearing on a detention petition within 72 hours of the initial detention. Former RCW 71.05.240(1) (2020). The 72-hour period began when a person was

---

[3] The commissioner's ruling on the motion to dismiss is not reflected in the commissioner's order detaining RF, and the record on appeal contains no written decision concerning this motion. Nor does the record on appeal contain a verbatim transcript of the hearing. However, RF's motion for revision claims the commissioner denied RF's motion without prejudice.

[4] In 2020, the legislature amended RCW 71.05.180 to require a hearing within *120 hours* of initial detention, allowing an additional 48 hours to hold a hearing.

accepted by the evaluation facility. Former RCW 71.05.180 (2019); former RCW 71.05.170 (2020).

"Involuntary commitment for mental disorders constitutes a significant deprivation of liberty that requires due process protections." *In re Det. of C.W.*, 147 Wn.2d 259, 277, 53 P.3d 979 (2002). Because the ITA impacts liberty interests, it must be strictly construed. *In re Det. of D.W.*, 181 Wn.2d 201, 207, 332 P.3d 423 (2014). However, RCW 71.05.010(2) provides

> When construing the requirements of this chapter the court must focus on the merits of the petition, except where requirements have been *totally disregarded*, as provided in *In re C.W.*, 147 Wn.2d 259, 281 (2002). A presumption in favor of deciding petitions on their merits furthers both public and private interests because the mental and physical well-being of individuals as well as public safety may be implicated by the decision to release an individual and discontinue his or her treatment.

Former RCW 71.05.010(2) (2020) (emphasis added).

The court in *In re Det. of C.W.* provided that courts weighing dismissal "should focus on the merits of the petition, the intent of the statute, and whether the State 'totally disregarded the requirements of the statute.'" 147 Wn.2d at 281 (quoting *In re Det. of Swanson*, 115 Wn.2d 21, 31, 804 P.2d 1 (1990)). The court in *In re Det. of Swanson* also held that "if the intent of the statute is to be fulfilled and absurd results are to be avoided, dismissal cannot turn on the vagaries of scheduling, especially in these unpredictable and sensitive proceedings." 115 Wn.2d at 31. In addition, "[d]ismissal of an involuntary treatment petition and release of the person subject to the petition is not often the proper remedy because of the importance of providing treatment to those requiring it." *In re Det. of C.V.*, 5 Wn. App. 2d 814, 822, 428 P.3d 407 (2018).

The trial court reviews the commissioner's decision on a motion to revise decision de novo. *Williams v. Williams*, 156 Wn. App. 22, 27, 232 P.3d 573 (2010). "When an appeal is taken from an order denying revision of a court commissioner's decision, we review the superior court's decision, not the commissioner's." *Williams*, 156 Wn. App. at 27.

## II. TOTAL DISREGARD

A.      *RF's Hearing*

RF argues that the state totally disregarded the timing requirements because it failed to timely schedule his hearing. He argues that his liberty interest must be prioritized over scheduling conflicts. The State argues that because the 72-hour period conflicted with the court schedule and the holidays, it did not "totally disregard" the timing requirements by setting the hearing for the next available docket day. Br. of Resp't at 8. We agree with the State.

In *In re Det. of N.G.*, we developed a framework under which the trial court should analyze whether a petitioner "totally disregarded" the ITA's requirements. ___ Wn. App. ___, 503 P.3d 1, 7 (2022).[5] In *In re. Det. of N.G.*, we held that a trial court must consider the "totality of the circumstances" in determining whether a petitioner has "totally disregarded" ITA requirements, and we established the following criteria:

> (1) whether the violation of the statutory requirements occurred knowingly, willfully or through gross negligence; (2) the extent of the deprivation of the committed person's liberty; (3) the extent to which the petitioner's conduct and the committed person's requested remedy are protective of the committed person's health and safety and reflect appropriate treatment for the committed person; and (4) the extent to which the petitioner's conduct and the committed person's requested remedy are protective of the safety of the public.

---

[5] Because *In re Det. of N.G.* was filed after RF's hearing, the trial court did not have an opportunity to issue findings on the *N.G.* factors.

*In re Det. of N.G.*, 503 P.3d at 9. We review the trial court's totality of the circumstances determination for an abuse of discretion. *In re Det. of N.G.*, 503 P.3d at 10. The weight given to each factor depends on the facts of the case. *In re Det. of N.G.*, 503 P.3d at 10.

Here, considering the totality of the circumstances, the State did not totally disregard ITA's requirements. First, the State knowingly violated the 72-hour detention period. The State not only failed to schedule RF's hearing within the 72- hour period, it failed to even file the petition until after expiration of the 72-hour period. In light of the predictability of holidays and weekend court closures, the State could have predicted the scheduling conflict and taken measures to ensure RF's hearing was heard within the statutory time frame.

However, this violation was not willful. The delay appears to have been caused by the unique juxtaposition of RF's initial detention, the weekend, the holiday, and the short 72-hour time limit, rather than the State's willful intent to hold RF longer than the statutory period.[6]

Second, the extent of RF's deprivation was minimal. RF was unlawfully detained for 18 hours. While his detention period expired on Monday, December 28, at noon, his hearing was set on Tuesday, December 29, at 9:00 a.m. for the first available docket.

Third, RF's requested remedy, dismissal of the petition, would not have protected his health and safety, and, at the time, reflected the appropriate treatment. RF was alleged to be in a manic episode with "delusional thought" and symptoms of paranoia. CP 42. RF stood up on chairs to talk and his wife testified that RF had a "higher baseline" compared to what he displayed at the evaluation. CP 42. RF's wife also testified that RF and his family were at risk

---

[6] We note that the legislature, in its amendment to the ITA, appears to have recognized that 72 hours was an insufficient period of time to evaluate a detainee and schedule a hearing. Had the amended statute been in effect in December 2020, RF's hearing would have been timely.

of eviction due to RF's behavior. Taking all those factors into consideration, dismissal of the petition would not have benefited RF's health and safety, nor would it have led to more appropriate treatment.

Fourth, dismissal of the petition would not be protective of public safety. RF had been paranoid, manic, cognitively impaired, and believed he was being "gas lighted." CP 42. He also was at risk of eviction due to his behavior. The fourth factor weighs against a finding of total disregard.

Considering the totality of these unique circumstances, the factors weigh against a finding that the State totally disregarded the timing requirements of the ITA. Therefore, the trial court did not abuse its discretion in denying RF's motion to revise the commissioner's decision.

B.      *Pierce County's Policy and Schedule*

RF argues that the superior court's policy of not hearing matters of involuntary detention on Mondays and Thursdays is in total disregard of the ITA's requirements. He argues that the policy makes it so that any person detained on a Friday will be invariably held more than 72 hours. The argument disregards the plain language of RCW 71.05.180 and thus fails.

RCW 71.05.180 states that "[t]he computation of such seventy-two hour period *shall exclude Saturdays, Sunday and holidays*." Former RCW 71.05.180 (emphasis added). The superior court's policy of not hearing involuntary detention petitions on Mondays does not itself violate the 72-hour period because a person detained on Friday and scheduled on Tuesday will fall within the 72-hour statutory period under RCW 71.05.180. However, a person detained on a Wednesday when the following Friday coincides with a holiday, could not be scheduled for a timely hearing based on the superior court's scheduling policy. This is an unusual situation

7

which unfortunately occurred in RF's case.[7] However, a violation of the 72-hour statute warrants dismissal only when that violation amounts to a *total disregard* of the statutory requirements. Former RCW 71.05.010(2). And, a finding of total disregard must be viewed under the totality of the circumstances. Considering the facts as presented in RF's case, the violation did not amount to a total disregard of the ITA's requirements. Therefore, the argument fails.

Because the State did not totally disregard the ITA's timing requirements, we hold that the trial court did not err in denying RF's motion to revise the commissioner's decision. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Maxa, J.

Lee, J.

---

[7] RCW 71.05.240(1) now provides that a hearing must be held within 120 hours instead of 72 hours. Therefore, this situation will not arise under the current statute.