# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE AUG 0 7 2014

*Madsen, C.J.*
CHIEF JUSTICE

This opinion was filed for record
at 8:00AM on Aug. 7, 2014

Ronald R. Carpenter
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| IN THE MATTER OF THE DETENTION OF: D.W., G.K., S.B., E.S., M.H., S.P., L.W., J.P., D.C., and M.P.,<br><br>Respondents,<br><br>and<br><br>FRANCISCAN HEALTH CARE SYSTEMS and MULTICARE, HEALTH SYSTEM,<br><br>Respondents/Intervenors,<br><br>v.<br><br>THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES and PIERCE COUNTY,<br><br>Appellants. | No. 90110-4<br><br>En Banc<br><br>Filed AUG 0 7 2014 |

GONZÁLEZ, J.—Washington State's involuntary treatment act (ITA), chapter 71.05 RCW, authorizes counties to briefly detain those who, "as the result of a mental disorder," present an imminent risk of harm to themselves or others, or are gravely disabled. RCW 71.05.153(1), .230. The initial brief

detention is for the limited purpose of evaluation, stabilization, and treatment, and once someone is detained under the ITA, he or she is entitled to individualized treatment. RCW 71.05.153, .230, .360(2). Pierce County frequently lacks sufficient space in certified evaluation and treatment facilities for all those it involuntarily detains under the ITA. It regularly resorts to temporarily placing those it involuntarily detains in emergency rooms and acute care centers via "single bed certifications" to avoid overcrowding certified facilities. Such overcrowding-driven detentions are often described as "psychiatric boarding." DAVID BENDER ET AL., A LITERATURE REVIEW: PSYCHIATRIC BOARDING 4 (2008). Patients psychiatrically boarded in single bed certifications generally receive only emergent care. After 10 involuntarily detained patients moved to dismiss the county's ITA petitions, a trial judge found that psychiatric boarding is unlawful. We agree and affirm.

FACTS

Our current involuntary civil commitment system has been regularly overwhelmed since it was first enacted by the legislature in 1979. Mary L. Durham & John Q. La Fond, *The Empirical Consequences and Policy Implications of Broadening the Statutory Criteria for Civil Commitment*, 3 YALE L. & POL'Y REV. 395, 411-12 (1985). By 1981, Western State Hospital, which at the time acted as an evaluation and treatment center, was filled to capacity and refused to accept more patients until it was ordered to by this

court. *Id.* at 412-13 & n.104 (citing *Pierce County v. W. State Hosp.*, 97 Wn.2d 264, 644 P.2d 131 (1982)).

Overcrowding has continued. In early 2013, Pierce County detained the 10 respondent patients before us under the ITA. In most cases, the respondents were initially held in hospital emergency rooms or in local acute care medical hospitals. None of these sites were certified as evaluation and treatment centers under the ITA. In all cases, the county, through one of its designated mental health providers, filed petitions to hold the respondents for up to 14 more days. Several of the involuntarily detained patients moved to dismiss these 14-day petitions on the grounds that they had not been, and believed they would not be, detained in a certified evaluation and treatment facility. On February 12, 2013, Mental Health Commissioner Adams heard the motions to dismiss two of these petitions. At this hearing, the prosecutor informed the commissioner that Pierce County had eight other single bed certifications pending in local medical facilities. Upon learning this, Commissioner Adams set the matter over for an evidentiary hearing on February 27, 2013. Concerned that he lacked necessary briefing and parties, the commissioner invited the Department of Social and Health Services (DSHS) and several of the hospitals who had housed involuntarily detained patients to participate.

One of the witnesses at the February 27 hearing was Nathan Hinrichs, the supervisor of the designated mental health professionals (DMHP) in Pierce

County. Hinrichs testified that once a DMHP determined that someone should be involuntarily detained for evaluation, "we try and locate a bed. We'll call up to five local hospital evaluation and treatment centers to try and find a bed, sometimes more." Clerk's Papers (CP) at 117.[1] If no bed is available, the DMHP would "seek to obtain a single bed cert[ification] to detain them at the community hospital." *Id.* at 118. To do that, the DMHP would fill out a certification form and "fax that to Western State" Hospital. *Id.* Western State Hospital "never asked" why Pierce County was seeking a single bed certification; it would almost always simply approve the request. *Id.* at 119. Indeed, Hinrichs could remember only one time a request was denied: when the county sought a single bed certification in the Special Commitment Center on McNeil Island. Hinrichs also testified that those patients involuntarily held in single bed certifications "are getting less care than they would if they were in an evaluation and treatment center [and] it's actually a more restrictive environment." *Id.* at 124. He testified that on the day of the hearing, there were 11 people in Pierce County held on single bed certifications. The State's witness, David Reed from DSHS's Division of Behavioral Health and Recovery, testified consistently. Reed also testified that the use of single bed certifications had "within the past seven years . . . pretty much exploded and is

---

[1] While Hinrich did not say specifically those five evaluation and treatment centers he would contact would be certified, the context suggests they would have been.

continuing to increase." *Id.* at 171. After the hearing, Commissioner Adams found that a patient involuntarily detained in a single bed certification "gets no psychiatric care or other therapeutic care for their mental illness" and that the practice of using single bed certifications to avoid overcrowding certified evaluation and treatment facilities is unlawful. *Id.* at 48, 192, 54-55.

Pierce County moved to revise Commissioner Adam's decision. While still technically appearing as an amicus, DSHS challenged the commissioner's power to hear the case and argued that psychiatric boarding to avoid overcrowding certified facilities was allowed by both the ITA and its implementing regulations, especially WAC 388-865-0526. Judge Nelson vacated the commissioner's decision, but she reached the same conclusion in her own extensive written ruling. She also granted the amici's motions to intervene.[2]

DSHS and Pierce County appealed. On the Court of Appeals' own motion, the 10 cases were consolidated and, after the briefs were filed,

---

[2] The hospitals' interest in intervening is clear. At the hearing below, the hospital interveners' counsel informed the trial judge:

> We operate three hospitals that have undergone, if you will, single-bed certifications. We have no psychiatrists. We have no psychiatric nurses. We have no orderlies. We have no ability to provide any of the treatment that is mandated under the statute. We are basically warehousing these people, including kids. I mean, we had a kid in the ER at Mary Bridge for 10 days the other day, or last month.

VRP (Mar. 29, 2013) at 16.

5

transferred to this court.[3] The respondent patients are supported on review by interveners MultiCare Health System and Franciscan Health System; by amici curiae Disability Rights Washington, the National Alliance on Mental Illness Washington, and the American Civil Liberties Union of Washington in one brief; and by amici curiae the Washington State Hospital Association, the Association of Washington Public Hospital Districts, the Washington State Medical Association, the Washington Chapter of the American College of Emergency Physicians, the Northwest Organization of Nurse Executives, the Washington State Nurses Association, SEIU Healthcare 1199NW, and the Washington Council of Emergency Nurse Association in another.

ANALYSIS

We review questions of law de novo and findings of fact for substantial evidence. *Soltero v. Wimer*, 159 Wn.2d 428, 433, 150 P.3d 552 (2007) (citing *Nordstrom Credit, Inc. v. Dep't of Revenue*, 120 Wn.2d 935, 942, 845 P.2d 1331 (1993)). The ITA impacts liberty interests and thus is strictly construed. *In re Det. of G.V.*, 124 Wn.2d 288, 296, 877 P.2d 680 (1994) (quoting *In re Det. of Swanson*, 115 Wn.2d 21, 31, 804 P.2d 1 (1990)).

The State's lawful power to hold those not charged or convicted of a crime is strictly limited. *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1474

---

[3] The record on appeal was sua sponte sealed by the Court of Appeals under RCW 71.05.620. No one has asked us to consider the propriety of this action.

(9th Cir. 1992) (citing *Baker v. McCollan*, 443 U.S. 137, 144, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)). However, "[a] state has a legitimate interest in treating the mentally ill and protecting society from their actions." *In re Albrecht*, 147 Wn.2d 1, 7, 51 P.3d 73 (2002) (citing *Addington v. Texas*, 441 U.S. 418, 426, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979)). Civil commitment is permitted, but the commitment system "must require that an individual be both mentally ill and dangerous for civil commitment to satisfy due process." *Id.* (footnote omitted) (citing *Addington*, 441 U.S. at 426); *Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992)). Anyone detained by the state due to "incapacity has a constitutional right to receive 'such individual treatment as will give each of them a realistic opportunity to be cured or to improve his or her mental condition.'" *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th Cir. 1981) (quoting *Wyatt v. Stickney*, 325 F. Supp. 781, 784 (M.D. Ala. 1971)). Patients may not be warehoused without treatment because of lack of funds. "'Lack of funds, staff or facilities cannot justify the State's failure to provide [such persons] with [the] treatment necessary for rehabilitation.'" *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003) (alterations in original) (quoting *Ohlinger*, 652 F.2d at 779).

The ITA itself embraces these principles. It says that "[e]ach person involuntarily detained or committed pursuant to [the ITA] shall have the right to adequate care and individualized treatment." RCW 71.05.360(2). The ITA

also repeatedly provides that those involuntarily detained for evaluation, stabilization, and treatment are to be held in certified evaluation and treatment facilities. *E.g.*, RCW 71.05.150(4) ("The designated mental health professional may notify a peace officer to take such person or cause such person to be taken into custody and placed in an evaluation and treatment facility."), .153(1) (providing that "the designated mental health professional may take such person, or cause by oral or written order such person to be taken into emergency custody in an evaluation and treatment facility"), .210 ("Each person involuntarily detained and accepted or admitted at an evaluation and treatment facility . . ."), .220 ("[a]t the time a person is involuntarily admitted to an evaluation and treatment facility . . ."). There are exceptions, but they are limited. [4]

> The act defines "evaluation and treatment facilities" as
>
> any facility which can provide directly, or by direct arrangement with other public or private agencies, emergency evaluation and treatment, outpatient care, and timely and appropriate inpatient care to persons suffering from a mental disorder, *and which is certified as such by the department*. A physically separate and separately operated portion of a state hospital may be designated as an evaluation and treatment facility. A facility which is part of, or operated by, the department or any federal agency will not require certification. No correctional institution or

---

[4] The ITA does authorize transfer to a chemical dependency treatment facility if the medical staff determine "that the initial needs of the person would be better served" in one or to a hospital if the patient's "physical condition reveals the need for hospitalization." RCW 71.05.210. Those are the only exceptions in the ITA itself for involuntarily detaining someone in a 72-hour or 14-day detention outside of a certified evaluation and treatment facility that have been called to our attention.

facility, or jail, shall be an evaluation and treatment facility within the meaning of this chapter.

RCW 71.05.020(16) (emphasis added). This definition does not include hospital emergency rooms or acute care centers unless they are specifically certified as evaluation and treatment centers, which no one in this case contends they were. We find that the act itself does not authorize single bed certifications to avoid overcrowding certified evaluation and treatment facilities.

Properly read, the administrative regulations at issue are in accord. The most relevant regulation provides:

> At the discretion of the mental health division, an exception may be granted to allow treatment to an adult on a seventy-two hour detention or fourteen-day commitment in a facility that is not certified under WAC 388-865-0500;
>
> . . . .
>
> (3) The request for single bed certification must describe why the consumer meets at least one of the following criteria:
>
> (a) The consumer requires services that are not available at a facility certified under this chapter or a state psychiatric hospital; or
>
> (b) . . . being at a community facility would facilitate continuity of care . . . .
>
> (4) . . . The single bed certification must not contradict a specific provision of federal law or state statute.

WAC 388-865-0526; *accord* WAC 388-865-0500. The State argues that this rule authorizes single bed certification both when the involuntarily detained patient needs medical care that is not available at a certified evaluation and treatment center and when there is no room in a certified evaluation and treatment center where appropriate treatment would be otherwise available. We disagree. Properly read, this rule allows single bed certifications when, in the exercise of professional judgment, a properly qualified agent of the mental health division determines that there is either a medical justification for involuntarily detaining a patient outside a certified facility or that the single bed certification would facilitate continuity of care. For example, the rule would allow a single bed certification when a patient "requires services that are not available" at an evaluation and treatment center, such as dialysis or chemical dependency treatment. WAC 388-865-0526(3)(a). By its plain terms, this rule does not authorize a single bed certification merely because there is no room at certified facilities with which the county already has a contractual relationship.[5]

The county argues we should show appropriate deference to the professional judgment of psychiatric professionals and not substitute our judgment for theirs. Br. of Appellant Pierce County DMHPs at 22 (citing *Youngberg v. Romeo*, 457 U.S. 307, 322-23, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982)). We agree that exercises of professional judgment of qualified

---

[5] If it did, it may violate both the ITA and constitutional rights of the patients.

professionals are entitled to substantial respect. *See generally Braam ex rel. Braam v. State*, 150 Wn.2d 689, 701, 81 P.3d 851 (2003). We would generally not disturb the decision of a qualified person that a patient had an individual need for services not available at any certified evaluation and treatment center. However, this record does not show that the decisions to involuntarily detain these patients outside of certified facilities was the result of an exercise of professional judgment about the needs of the individual patient. Instead, the record demonstrates that a DMHP did not find room in a certified evaluation and treatment facility and that some person at Western State Hospital approved a request for a single bed certification without knowing whether there was a medical justification for involuntarily detaining that individual patient outside of a certified facility. We find that the ITA authorizes single bed certifications for statutorily recognized reasons individual to the patient, but not merely because there is a generalized lack of room at certified facilities.[6]

CONCLUSION

We affirm the trial judge's ruling that the ITA does not authorize psychiatric boarding as a method to avoid overcrowding certified evaluation and treatment facilities.

---

[6] The State and county brought many challenges to the trial judge's authority to hear the case. We find the judge had authority to consider the lawfulness of the county's actions under the ITA and find the other challenges unavailing. Given our disposition, we do not reach the remaining challenges brought by the respondents.

González, J.

WE CONCUR:

Madsen, C.J.

Stephens, J.

Owens, J.

Wiggins, J.

Fairhurst, J.

Gordon McCloud, J.

Yu, J.