FILED
9/18/2023
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| In the Matter of the Detention of | No. 84834-8-I |
| E.M.R.R., | |
| | UNPUBLISHED OPINION |
| Appellant. | |

BOWMAN, J. — E.M.R.R. appeals a 14-day involuntary commitment order. She argues the court erred by not entering an order authorizing her detention until nearly a week after the 120-hour time limit expired. We agree. Because E.M.R.R. was held without lawful authority, we reverse and remand to vacate the 14-day involuntary commitment order and dismiss the petition.

FACTS

At about 4:30 a.m. on Monday, December 5, 2022, police transported E.M.R.R. to the emergency department at University of Washington Medical Center Montlake after she had smashed her own car windows because " 'demons' " had trapped her inside. At 5:00 a.m., an emergency department social worker filed a "Petition for Initial Detention" under the involuntary treatment act (ITA), chapter 71.05 RCW. The hospital later relocated E.M.R.R. to Valley Cities Recovery Place in Kent.

On Thursday, December 8, 2022, Valley Cities petitioned for a 14-day involuntary treatment hold. A superior court judge held a probable cause hearing on the petition the next day, December 9. All the witnesses testified, but the

court could not hear closing arguments by the end of the day. So, the court orally continued the matter to Monday, December 12.

For reasons that are unclear from the record, nothing occurred on Monday, December 12. The court did not resume the hearing until Friday, December 16, four days after the statutory time limit to involuntarily detain a person had expired. After closing arguments, the court granted Valley Cities' petition, finding that E.M.R.R. was gravely disabled. The court found that treatment in a less restrictive alternative setting was not in her best interests and ordered Valley Cities to detain E.M.R.R. for up to 14 days. The court backdated the 14-day period of commitment to begin on December 9, 2022.

E.M.R.R. appeals.

## ANALYSIS

E.M.R.R. asserts we should reverse the 14-day order of commitment for involuntary treatment because the court did not enter the order within 120 hours of her initial detention as required by due process and the ITA. The State argues that this issue is not properly before us because E.M.R.R. did not raise it below. Alternatively, the State asserts that dismissal is not an appropriate remedy for the alleged error. In light of recent Washington Supreme Court decisions, we agree with E.M.R.R.[1]

RAP 2.5(a)(3)

The State asserts we should not review E.M.R.R.'s challenge to her

---

[1] Although E.M.R.R.'s appeal is technically moot because the 14-day hold has ended, her issue on appeal is one of continuing and substantial public interest, so we accept review. See In re Det. of H.N., 188 Wn. App. 744, 749-50, 355 P.3d 294 (2015).

involuntary hold because she did not raise the issue below and the error is not manifest. We disagree.

As a general rule, we will not review an issue raised for the first time on appeal. RAP 2.5(a). But a party may raise for the first time manifest error affecting a constitutional right. RAP 2.5(a)(3). In order to show manifest constitutional error, the appellant must make a plausible showing that the asserted error had practical and identifiable consequences in the proceedings. State v. A.M., 194 Wn.2d 33, 38, 448 P.3d 35 (2019).

Here, E.M.R.R. alleged the court erred by not entering the 14-day involuntary commitment order until well after the statutory time limit to hold her had expired. There is no dispute that the error affects E.M.R.R.'s constitutional rights. Indeed, "[i]nvoluntary commitment for mental disorders constitutes a significant deprivation of liberty that requires due process protections." In re Det. of C.W., 147 Wn.2d 259, 277, 53 P.3d 979 (2002) (citing Addington v. Texas, 441 U.S. 418, 425, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979)). The error was also manifest. The trial court's order detaining E.M.R.R. had practical and identifiable consequences in the proceedings.[2] We decline the State's request to dismiss E.M.R.R.'s appeal on procedural grounds.

---

[2] The State asserts that E.M.R.R. suffered no actual prejudice as a result of the delay, so the claimed error is subject to a harmless error analysis. The State misconstrues the relevant standard of inquiry. "The requirements under RAP 2.5(a)(3) should not be confused with the requirements for establishing an actual violation of a constitutional right or for establishing lack of prejudice under a harmless error analysis if a violation of a constitutional right has occurred." State v. Lamar, 180 Wn.2d 576, 583, 327 P.3d 46 (2014).

ITA Violation

E.M.R.R. argues that the trial court erred by entering the 14-day involuntary commitment order more than 120 hours after her initial detention. We agree.

Our legislature ensures due process protection for those living with "behavioral health disorders" through the ITA. See RCW 71.05.010. Interpretation of the ITA is a question of law we review de novo. In re Det. of D.H., No. 100716-7, slip op. at 11 (Wash. July 27, 2023), https://www.courts. wa.gov/opinions/pdf/1007167.pdf. We look to the plain meaning of a statute as an expression of legislative intent. See C.W., 147 Wn.2d at 272.

Given the liberty interests at stake, courts must strictly construe the ITA. In re Det. of D.W., 181 Wn.2d 201, 207, 332 P.3d 423 (2014) (citing In re Det. of G.V., 124 Wn.2d 288, 296, 877 P.2d 680 (1994)). Further, our legislature has decreed that "[w]hen construing the requirements of [the ITA] the court must focus on the merits of the petition, except where requirements have been totally disregarded." RCW 71.05.010(2).

The ITA permits a treatment facility to petition for up to 14 days of involuntary commitment for any person with a behavioral health disorder. See RCW 71.05.240. The court must hold a probable cause hearing on the petition where the petitioner must show by a preponderance of the evidence that "as the result of a behavioral health disorder," the person detained "presents a likelihood of serious harm, or is gravely disabled," and for whom less restrictive treatment would not be in their best interest. RCW 71.05.240(1), (4)(a). Excluding

4

Saturdays, Sundays, and holidays, the court must hold the probable cause hearing within 120 hours, or five days, of the initial detention. RCW 71.05.180, .240(1).

After E.M.R.R. filed her appeal, our Supreme Court issued its decisions in D.H. and In re Detention of A.C., No. 100668-3 (Wash. July 28, 2023), https://www.courts.wa.gov/opinions/pdf/1006683.pdf. In both cases, the court held that under due process requirements and RCW 71.05.010(2), "the State may not totally disregard the requirements of the ITA when involuntarily detaining a person," and if it does, "dismissal is required." A.C., slip op. at 13; see also D.H., slip op. at 15 ("When the State totally disregards the [requirements of] the ITA, the remedy is dismissal."). The court also held that "the requirements of the ITA have been totally disregarded when a person is involuntarily detained without legal authority under the act." A.C., slip op. at 14.

In her statement of additional authorities, E.M.R.R. likens her case to D.H. That case concerned a patient involuntarily held at a hospital on a 72-hour hold.[3] D.H., slip op. at 3. Believing that D.H. would agree to voluntary inpatient treatment, the evaluator did not petition for a 14-day hold. Id. at 3-4. But D.H. did not agree to treatment, and the hospital did not release him at the expiration of the 72 hours. Id. at 4-5. Instead, it filed a second notice of 72-hour emergency detention under a new cause number and petitioned for a 14-day

---

[3] An earlier version of the ITA permitted a facility to involuntarily hold a patient without a court order for up to 72 hours. See, e.g., former RCW 71.05.180 (2020). The legislature amended the ITA in 2020 to extend the initial holding period to 120 hours. LAWS of 2020, ch. 302.

hold. Id. at 5. D.H. moved to dismiss, which the court did not hear until 20 days after his initial detention. Id.

Former RCW 71.05.210(1)(b) (2019), the statute in effect at the time of D.H.'s detention, stated:

> A person who has been detained for [72] hours shall no later than the end of such period be released, unless referred for further care on a voluntary basis, or detained pursuant to court order for further treatment as provided in this chapter.

Our Supreme Court concluded that because D.H. did not voluntarily agree to further care and the hospital did not obtain a court order authorizing further treatment, the "only option" was release. D.H., slip op. at 15-16. The court held that the hospital's failure to release D.H. constituted "a total disregard of the ITA" and required dismissal of the 14-day involuntary treatment petition. Id. at 16-17.

The State likens this case to In re Detention of Swanson, 115 Wn.2d 21, 804 P.2d 1 (1990). In that case, the court scheduled an involuntary treatment probable cause hearing within the statutory 72-hour emergency detention period. Id. at 23. The court began its calendar within the 72-hour time limit but did not actually begin Swanson's hearing until about 74 hours after detention. Id. Our Supreme Court held that "in the civil commitment context, a hearing begins when the court calendar begins and the parties' attorneys are ready to proceed." Id. at 31. So, Swanson's hearing had "begun" within the statutory time limit, and dismissal was not warranted. Id. at 28, 31. The court noted that "if the intent of the statute is to be fulfilled and absurd results are to be avoided, dismissal cannot turn on the vagaries of scheduling, especially in these unpredictable and sensitive proceedings." Id. at 31.

Here, the hospital detained E.M.R.R. on Monday, December 5, 2022. The court began a probable cause hearing within the statutory time frame on December 9. But it did not conclude the hearing and issue an order of detention until December 16—four days after the statutory time limit expired. So, like D.H., no court order authorized the detention of E.M.R.R. beyond the statutory time frame, and Valley Cities held E.M.R.R. without authority of law for at least four days.

We recognize that a court may continue an involuntary commitment probable cause hearing "for a reasonable time" beyond the 120-hour time limit if "[t]he respondent expressly consents to a continuance or delay and there is a showing of good cause," or "[s]uch continuance is required in the proper administration of justice and the respondent will not be substantially prejudiced in the presentation of [their] case."[4] RCW 71.05.236(1). But if the court continues the involuntary commitment hearing, it "shall state in any order of continuance or postponement the grounds for the continuance or postponement and whether detention will be extended." RCW 71.05.236(4). And here, there is no written or oral order in the record explaining why the court continued E.M.R.R.'s hearing to December 16. Under D.H., the only option on December 16 was to dismiss Valley Cities' petition for 14 days of involuntary treatment. D.H., slip op. at 15.

---

[4] The ITA no longer has a time limit on how long the court may continue a hearing on a petition for involuntary commitment. Compare LAWS OF 2020, ch. 302, § 37 (adding new section RCW 71.05.236), with LAWS OF 2020, ch. 302, § 38 (striking language from former RCW 71.05.240(1) (2019) that stated the court may postpone the probable cause hearing "for a period not to exceed [48] hours" if requested by the petitioner or "subject to the petitioner's showing of good cause for a period not to exceed [24] hours").

The State asserts that even if E.M.R.R.'s hearing occurred outside the 120-hour time frame, dismissal is unwarranted because the delay in finalizing E.M.R.R.'s hearing was largely because of E.M.R.R.'s counsel. We disagree.

On Friday, December 9, 2022, E.M.R.R.'s counsel notified the court that because of medical reasons, she would be unavailable on Tuesday, Wednesday, and possibly Thursday, December 13 through 15. But counsel was available on Monday, December 12, and asked the court to finish the hearing "first thing Monday" due to her scheduling conflict. The record does not show that E.M.R.R.'s counsel caused the delay.

By continuing E.M.R.R.'s hearing to December 16 without an oral or written order explaining its reasons for doing so, the court totally disregarded the requirements of the ITA. Because dismissal of the 14-day involuntary treatment petition was the only appropriate remedy for this violation, we reverse and remand for the trial court to vacate the 14-day involuntary commitment order and dismiss the petition.

Bowman, J.

WE CONCUR:

Coburn, J.          Mann, J.

8